UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

KAREN W.,

              Plaintiff,

    v.

COMMISSIONER SOCIAL SECURITY
ADMINISTRATION,

              Defendant.

Case No. 6:24-cv-00294-AR

OPINION AND ORDER

_____

**ARMISTEAD, United States Magistrate Judge**

       In this judicial review of the Commissioner's final decision denying Social Security

benefits, Karen W. (last name omitted for privacy) challenges the Administrative Law Judge's

findings regarding her symptom testimony, the medical opinion evidence, the lay witness

Page 1 – OPINION AND ORDER

testimony, and the vocational expert's testimony. (Pl.'s Br. at 10-20.) As explained below, the court affirms the Commissioner's decision.[1]

## PROCEDURAL BACKGROUND

Plaintiff applied for Title II Disability Insurance Benefits (DIB) in January 2018, alleging disability onset as of December 31, 2017. (Tr. 815-17.) Her application was denied, and plaintiff requested, and was granted, a hearing before an ALJ. (Tr. 176, 188.) On October 29, 2019, the ALJ issued a decision finding plaintiff was not disabled. (Tr. 150-70.) Plaintiff appealed and the Appeals Council subsequently remanded plaintiff's claim for development of the record. (Tr. 171-75, 253.) The Appeals Council instructed the ALJ on remand to develop the record as to plaintiff's impairments and limitations, give consideration to whether plaintiff's fibromyalgia was a severe impairment at step two of the sequential evaluation, and give consideration to the medical source opinion evidence. (Tr. 173.)

A new hearing took place on October 7, 2020. (Tr. 39-79.) On March 1, 2021, the ALJ issued a partially favorable decision finding plaintiff was disabled as of February 6, 2021, but was not disabled before that date. (Tr. 33.) The Appeals Council denied plaintiff's request for review of the ALJ's decision. (Tr. 1-6.)  Plaintiff sought review from this court, and on May 18, 2022, the ALJ's decision was reversed and remanded for further proceedings, based on the parties' stipulation. (Tr. 703-04.) The parties agreed that on remand, the ALJ must restrict her findings to the period before February 6, 2021, and "reevaluate the medical opinions and prior

---

[1]     This court has jurisdiction under 42 U.S.C. §§ 405(g) and 1383(c)(3), and all parties have consented to jurisdiction by magistrate judge under Federal Rule of Civil Procedure 73 and 28 U.S.C. § 636(c).

administrative medical findings." (Tr. 703-04.) The ALJ was also required to reevaluate the RFC, and "obtain supplemental vocational expert evidence to clarify the effect of the assessed limitations on Plaintiff's ability to perform other work in the national economy." (Tr. 704.)

Plaintiff's third hearing took place before an ALJ on November 2, 2023. (Tr. 651-73.) On November 17, 2023, the ALJ issued an unfavorable decision, and plaintiff now seeks review of that decision. (Tr. 623-50.)

## ALJ'S DECISION

In denying plaintiff's applications for DIB, the ALJ followed the five-step sequential evaluation process.[2] At step one, the ALJ determined that plaintiff engaged in substantial gainful activity (SGA) from March 2020, through September 2020. (Tr. 628.) Yet plaintiff had a continuous 12-month period wherein she did not engage in substantial gainful activity, and the ALJ thus directed her remaining findings to that period. (Tr. 629.) At step two, the ALJ determined that plaintiff had the following severe impairments: left shoulder calcific tendonitis, migraine headache disorder, cervical spine degenerative disc disease, irritable bowel syndrome, obesity, posttraumatic stress disorder (PTSD), persistent depressive disorder, and social anxiety disorder. (Tr. 629.) At step three, the ALJ determined that plaintiff's impairments, singly or in combination, did not meet or medically equal the severity of any listed impairment. (Tr. 631.)

---

[2]     To determine a claimant's disability, the ALJ must apply a five-step evaluation. *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). If the ALJ finds that a claimant is either disabled or not disabled at any step, the ALJ does not continue to the next step. *Id.*; *see also Parra v. Astrue*, 481 F.3d 742, 746-47 (9th Cir. 2007) (discussing the five-step evaluation in detail).

As for the ALJ's assessment of plaintiff's residual functional capacity (RFC), 20 C.F.R. § 404.1545,  the ALJ determined that plaintiff had the ability to perform light work with these added limitations:

> occasional climbing of ramps or stairs, no climbing of ladders, ropes, or scaffolds, and occasional stooping, kneeling, crouching, and crawling. With the left upper extremity, the claimant was limited to occasional overhead reaching and frequent reaching in other directions (left hand dominant individual). [She is] limited to understanding, remembering, carrying out, and persisting at simple, routine, repetitive tasks, and making simple work-related decisions with few if any changes in the workplace, no assembly line pace work. She is limited to no public contact and occasional contact with coworkers and supervisors. A bathroom must be on premises.

(Tr. 633.) At step four, the ALJ determined that plaintiff cannot perform any past relevant work. (Tr. 642.) Considering her RFC, the ALJ found at step five that, through February 5, 2021, jobs existed in significant numbers in the national economy that plaintiff could perform, including such representative occupations as marker, small products assembler, and electronics worker. (Tr. 644.)

## STANDARD OF REVIEW

The district court must affirm the Commissioner's decision if the Commissioner applied proper legal standards and the findings are supported by substantial evidence in the record. 42 U.S.C. § 405(g); *Ford v. Saul*, 950 F.3d 1141, 1154 (9th Cir. 2020). Substantial evidence is "more than a mere scintilla" and is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quotation and citation omitted). To determine whether substantial evidence exists, the court must weigh all the evidence, whether it supports or detracts from the Commissioner's decision. *Garrison v. Colvin*, 759 F.3d 995, 1009 (9th Cir. 2014).

## DISCUSSION

### A.    *Medical Opinion Evidence*

Plaintiff challenges the ALJ's consideration of the medical opinions of Drs. Coss, Trueblood, and Hennings. The regulations require ALJs to evaluate the supportability and consistency of a medical opinion when assessing its persuasiveness. 20 C.F.R. § 404.1520c. ALJs must "articulate . . . how persuasive [they] find all of the medical opinions" and "explain how [they] considered the supportability and consistency factors." *Woods v. Kijakazi*, 32 F.4th 785, 792 (9th Cir. 2022) (quoting 20 C.F.R. § 404.1520c(b)(2)). Supportability is determined by assessing whether the medical source provides explanations and objective medical evidence to support their opinion. 20 C.F.R. § 404.1520c(c)(1). Consistency is determined by evaluating how consistent the opinion is with evidence from other medical and nonmedical sources in the record. 20 C.F.R. § 404.1520c(c)(2).

### 1.    Dr. Coss

On September 25, 2019, David Coss, MD, submitted a treating source statement in support of plaintiff's disability claim. The ALJ found Dr. Coss's opinion unpersuasive because the opined limitations were not supported by either his narrative explanation or plaintiff's treatment records. (Tr. 640.) Dr. Coss, the ALJ observed, did not examine plaintiff when he met with her to fill out his medical opinion form; instead he "appear[ed] to have merely recorded what she told him that day, even though her report of symptoms and limitations that day are found nowhere else in the medical evidence." (Tr. 640.) And the ALJ found that Dr. Coss's opinion as to plaintiff's likelihood of missing work due to appointments and unscheduled

bathroom breaks was inconsistent with the record. (Tr. 640.) The ALJ's conclusions are supported by substantial evidence.

Dr. Coss's opinion states that plaintiff would need multiple 20-minute unscheduled breaks throughout the day due to diarrhea and nausea, and that plaintiff has "diarrhea up to twenty times a day." (Tr. 581.) As noted by the ALJ, there are no treatment records that support that severity or frequency, even when plaintiff's gastrointestinal complaints were discussed. (*See, e.g.*, Tr. 527, 535, 538, 540, 541, 548, 549, 550, 553, 557, 561, 570, 574, 577, 602, 605, 606, 610.) There is no record of IBS before August 7, 2018, where IBS is listed as a follow up topic. (Tr. 548.) Following that notation, IBS is not mentioned again until March 7, 2019. (Tr. 561.) Indeed, Dr. Coss's own treatment notes reflect only infrequent discussions of irritable bowel syndrome and symptoms, and never to the extent alleged in his medical opinion until September 2019, the date he provided the medical opinion form on her behalf. (*See, e.g.*, Tr. 570, 574-75, 586-87, 594, 596-97, 605, 610, 640.)

The ALJ also noted that there are no evaluations or diagnostic testing for gastrointestinal complaints on which Dr. Coss could have relied in forming his opinion. (Tr. 640.) Plaintiff argues that the ALJ ignored her explanation that she could not afford more specialized care. (Pl. Br. At 11.) At her 2019 administrative hearing, plaintiff cited high out-of-pocket costs as the reason that she could not follow up on treatment recommendations. (Tr. 96.) Even so, the ALJ's determination did not rely solely on plaintiff's lack of follow through on recommended courses of treatment and diagnostic testing. Instead, the ALJ detailed an extensive review of plaintiff's records, including records showing that plaintiff visited the doctor regularly during the relevant period, and failed to allege symptoms at the level reported in Dr. Coss' opinion. (Tr. 586-87.)

Plaintiff also argues that the ALJ erred in evaluating Dr. Coss's medical opinion by failing to explore the connection between her PTSD and her abdominal pain and diarrhea. In plaintiff's view, the Appeals Council's remand order required the ALJ to discuss her PTSD and her abdominal symptoms. (Tr. 708-10; Pl. Br. At 11.) That argument is misplaced because the Appeals Council's order referred to the ALJ's analysis of plaintiff's symptom testimony, not Dr. Coss's medical opinion. (Tr. 708.) Moreover, even if that remand order required the ALJ to discuss plaintiff's PTSD and abdominal issues in the context of Dr. Coss's opinion, the ALJ did so.  The ALJ explained that Dr. Coss's opinion that "PTSD flares" would exacerbate plaintiff's IBS symptoms were unsupported by the record, including that plaintiff rarely complained of IBS symptoms, had no diagnostic tests or specialty care associated with her IBS, and never complained of limitations to like those reflected in Dr. Coss's opinion. (Tr. 640.)

Finally, Dr. Coss's opinion that plaintiff's emotional lability would interfere with her ability to work is similarly unsupported by his treatment notes and the record as a whole. As the ALJ found, only on the day Dr. Coss provided his medical opinion did plaintiff report to Dr. Coss emotional lability interfering with her ability to work. (Tr. 640.) That finding is supported by substantial evidence. Plaintiff did not report emotional lability to other providers at medical appointments, and records consistently refer to her mood and affect as normal. (*See, e.g.*, Tr. 539, 542, 556, 560, 562.)

Plaintiff asserts that Dr. Coss's conclusion about her lability is supported by records from consultative examiner, Dr. Trueblood, including that she "was expelled from school twice, could not get along with her teachers, had to finish her schooling through an adolescent day treatment center, and has had problems getting along with others in various workplaces as an adult." (Tr.

617-18; Pl. Br. At 11.)  Although Dr. Trueblood's examination records document plaintiff's subjective history, those records do not show a pattern of lability. She explained to Dr. Trueblood that she does not have "any tendency to yell or raise her voice toward others" and that her "[t]emper was a more significant problem for her back in her junior high years." (Tr. 532.) And plaintiff's records show that she is often described as having a normal affect, without a depressed mood. (*See, e.g.*, Tr. 528, 533, 539, 540, 542, 556, 560, 562, 570, 574.) Because the ALJ discussed the supportability and consistency factors with a rationale supported by substantial evidence, the ALJ did not err in finding Dr. Coss's opinion unpersuasive.

### 2. Dr. Trueblood

In April 2018, William Trueblood, PC, Ph.D., ABN, performed a consultative examination of plaintiff at the request of the agency. (Tr. 617.) Dr. Trueblood assessed plaintiff as having a "degree of working memory impairment that may impact understanding relatively complex instructions." (Tr. 621.) Dr. Trueblood also opined that it was "appropriate to rate Karen as having significant shortcoming in ability to remember instructions, and it could be as much as substantial in degree." (Tr. 621-22.)

The ALJ found Dr. Trueblood's opinion persuasive but found his assessment of plaintiff's "significant shortcomings [] in understanding and remember instructions, greater when they are fairly complex, shortcomings in attention and concentration, and difficulty engaging in appropriate social interactions" to be vague. (Tr. 642.) The ALJ thus determined that plaintiff had a "moderate impairment" in attention and concentration, based on Dr. Trueblood's clinical findings. (Tr. 642.) The ALJ concluded that "Dr. Trueblood's assessment lends supports to the findings that the claimant is limited to simple instructions with simple decisions in environments

with few changes and limitations on interactions with the public, coworkers, and supervisors."
(Tr. 642.)

Plaintiff does not directly challenge the ALJ's evaluation of Dr. Trueblood's opinion, but argues that the ALJ improperly translated Dr. Trueblood's restrictions into an RFC limiting her to "simple instructions, simple decisions in environments with few changes, and limitations in interacting with the public, coworkers, and supervisors." (Pl. Br. at 13.) Dr. Bill Hennings, an agency psychologist, reviewed Dr. Trueblood's report and offered several concrete limitations. According to plaintiff, the ALJ should have "used the translation of Dr. Trueblood's opinion as set forth in Dr. Hennings' opinion," instead of the ALJ crafting her own interpretation. (Pl. Br. at 13-14.)

Plaintiff asks the court to go beyond what the law itself requires. First, ALJs do not err by relying on their own translation of a limitation into a concrete RFC restriction; nor are ALJs required to adopt a credited medical source's opinion, so long as the RFC finding adequately captures that opinion. *See Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1174 (9th Cir. 2008) (an ALJ is not compelled to adopt, word-for-word, the limitations set forth by a credited medical opinion, so long as the RFC adequately captures that opinion.) (citing *Howard v. Massanari*, 255 F.3d 577, 582 (8th Cir. 2001)). Here, the ALJ considered Dr. Trueblood's evaluation and translated his assessment into concrete restrictions consistent with his opinion. The ALJ was not required to adopt Dr. Hennings translation of Dr. Trueblood's assessment and plaintiff points to no authority to support such an assertion.

Even after the ALJ assessed plaintiff's limitations, the ALJ did not have to include those limitations verbatim in the RFC or hypothetical question to the VE. *See* 20 C.F.R. §

404.1520a(c)-(d) (only after the degree of limitation is rated in the functional areas is the severity of the impairment rated overall; if the severity does not establish a listing, only then is the RFC formulated); SSR 96-8p, 1996 WL 374184, at *4 ("limitations identified in the 'paragraph B' and 'paragraph C' criteria are not an RFC assessment"). Here, the ALJ reviewed Dr. Trueblood's clinical findings regarding plaintiff's ability to understand and remember instructions against the record and concluded that a moderate limitation was appropriate. The ALJ then supported that conclusion with substantial evidence. (Tr. 642.) The ALJ therefore did not err in her evaluation of Dr. Trueblood's medical opinion.

### 3. Dr. Hennings

Dr. Hennings submitted a medical evaluation noting that plaintiff "is only occasionally able to carry out detailed instructions. She can work in proximity to others but should not be required to work in coordination with others. In the setting of a simple, routine job, [she] can complete a normal work week." (Tr. 130.) Dr. Hennings opined that plaintiff is precluded from working with the public, and "will occasionally fail to get along with coworkers and requires a job with relative autonomy." (Tr. 130.)

The ALJ found Dr. Hennings' opinion persuasive in terms of "limiting the claimant to simple, routine jobs and no work with the public," but that other limitations included in his opinion were unsupported by the record. (Tr. 641.) For example, the ALJ found Dr. Hennings' statement that plaintiff would occasionally fail to get along with coworkers not persuasive because it was inconsistent with evidence that plaintiff regularly had a normal mood and affect, and no issues with irritability. (Tr. 641.) Additionally, the ALJ found that "[s]imple, routine, repetitive tasks, simple work-related decisions, and few if any changes eliminate the need for

additional provisions . . . concerning 'supported transitions' during changes and 'assistance to set realistic goals.'" (Tr. 641.) The ALJ declined to include Dr. Hennings' limitation concerning supported changes because it was inconsistent with plaintiff's "own statement that she handled changes in routine 'great.'" (Tr. 641.)

Plaintiff argues that the ALJ's RFC finding omits key limitations and is therefore insufficient. (Pl. Br. at 13-14.) Specifically, plaintiff argues that the omission of the limitation to "occasionally" being able to carry out detailed instructions amounts to legal error. It is plaintiff's contention that Dr. Hennings' use of the term "occasionally" restricts plaintiff to carrying out detailed instructions for only up to one-third of the workday. By limiting plaintiff to only occasionally carrying out detailed instructions, plaintiff argues that she is only capable of performing jobs at reasoning level one, whereas the VE identified only jobs at reasoning level two. Plaintiff argues that, had the ALJ's RFC finding "included the limitation on performing detailed tasks," the RFC would have been more restrictive. (Pl. Repl. Br. at 7.)

The ALJ adequately explained the reasoning for partially discounting Dr. Hennings' limitation regarding complex instructions and mental tracking, noting that the asserted limitations contrast with plaintiff's ability to perform six months of skilled work at above SGA levels in 2020, after both Dr. Hennings' and Dr. Trueblood's opinions were issued. (Tr. 632.) An ALJ need only include those limitations that he or she finds credible and supported by the record, so long as the ALJ makes specific findings explaining why the limitations were not probative. *Stubbs-Danielson*, 539 F.3d at 1174; *see also Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 886 (9th Cir. 2006) ("[I]n hypotheticals posed to vocational expert, the ALJ must only include those limitations supported by substantial evidence."). The RFC also limits plaintiff to "understanding,

remembering, carrying out, and persisting at simple routine repetitive tasks," as well as only making "simple work-related decisions with few if any changes in the workplace, no assembly line pace work." (Tr. 633.) This sufficiently accounts for plaintiff's moderate limitation in her ability to understand, remember, and apply information. Thus, the ALJ's rationale for not including more restrictive limitations is reasonable and supported by substantial evidence. *See* SSR 96-8p; *see also Bayliss v. Barnhart*, 427 F.3d 1211, 1217 (9th Cir. 2005) (concluding that an ALJ is only required to include in the RFC those symptoms and limitations which the ALJ determines are reliable and consistent with the record as a whole).

**B.    *Subjective Symptom Testimony***

Plaintiff argues that the ALJ failed to give specific, clear and convincing reasons for disregarding her subjective symptom testimony. (Pl. Br. at 15-16.) Determining the credibility of a claimant's symptom testimony requires the ALJ to undertake a two-step process of analysis. *Trevizo v. Berryhill*, 871 F.3d 664, 678 (9th Cir. 2017); 20 C.F.R. § 404.1529. At the first step, the claimant must produce objective medical evidence of an underlying impairment that could reasonably be expected to produce the alleged symptoms. *Treichler v. Comm'r Soc. Sec. Admin.*, 775 F.3d 1090, 1102 (9th Cir. 2014); *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008). At the second step, if there is no affirmative evidence of malingering, the ALJ must provide specific, clear and convincing reasons for discounting the claimant's testimony. *Brown-Hunter v. Colvin*, 806 F.3d 487, 488-89 (9th Cir. 2015); 20 C.F.R. § 404.1529. The specific, clear and convincing standard is "the most demanding required in Social Security cases" and is "not an easy requirement to meet." *Garrison,* 759 F.3d at 1015*; Trevizo,* 871 F.3d at 678-79. The "clear and convincing" standard requires an ALJ to "show [their] work" but, ultimately, the question is

not whether ALJ's rationale convinces the court, but whether the ALJ's rationale "is clear enough that it has the power to convince." *Smartt v. Kijakazi*, 53 F.4th 489, 499 (9th Cir. 2022).

Plaintiff contends that the ALJ failed to provide clear and convincing reasons for rejecting her symptom testimony. That is, according to plaintiff, the ALJ improperly disregarded her testimony that she "needs multiple restroom breaks each day to deal with her IBS symptoms." (Pl. Br. at 17.) And plaintiff asserts that her limited ability to "lift and stand establishes that she would not have been able to perform more than sedentary work during the period at issue." (*Id.*)

### 1. Medical Evidence

The ALJ properly discounted plaintiff's testimony about the limiting effects of her irritable bowel syndrome. (Tr. 636-37.) As the ALJ noted, the "[l]imited frequency and consistency of complaints, lack of follow through with diagnostic evaluations, and no unintended weight loss, anemia, or malnutrition" suggested plaintiff's IBS symptoms did not "support limitations beyond what is in the residual functional capacity." (Tr. 637.) The ALJ's reasons are clear and convincing and supported by substantial evidence in the record. For example, the ALJ noted that, "despite reports of urgent need to use the restroom multiple times a day and abdominal pain in disability related paperwork and testimony, there is little evidence of the claimant consistently reporting these issues to her treating providers." (Tr. 636.) As noted above, the record reflects that during routine medical exams, plaintiff "often denied abdominal pain, change in bowel habits, and loss of bowel control." (Tr. 636, citing Tr. 438, 444, 449, 508, 541, 553.) For example, in April 2019, plaintiff described abdominal symptoms such as cramping, bloating, and mucous like stools with blood occurring "regularly over the last year" but denied

weight changes and did not mention diarrhea symptoms. (Tr. 570-71.) Plaintiff received a

prescription for her symptoms and at her next appointment in July 2019, she mentioned no

abdominal complaints. (Tr. 574-75.) On September 10, 2019, plaintiff called Dr. Coss to discuss

filling out her disability paperwork. (Tr. 586.) As elaborated on above, this is the first occasion

that plaintiff attributed "frequent bathroom trips" to her PTSD. During a follow up appointment

with Dr. Coss, plaintiff attributed chronic pain, abdominal pain, and diarrhea to "manifestations

of her PTSD." (Tr. 587-88.) This is the sole treatment record describing the frequency of her

bowel movements as "diarrhea up to 20 times per day." (Tr. 588.) In contrast, at her October

2019 hearing, plaintiff testified that she has "has had IBS for quite a while" and that she uses the

bathroom "[p]robably every hour, or three or four times an hour." (Tr. 93.) The ALJ noted in the

decision, inconsistent with that testimony, that plaintiff did not follow up on referrals for imaging

and labs regarding her stomach complaints, and in August 2020, plaintiff described "no other

concerns or complaints" besides her joint pain. (Tr. 605, 637.) The ALJ also found that plaintiff

did not report symptoms of frequent need for bathroom use again until the October 2020 hearing,

where she stated that she needed to use the bathroom "at least 10 times" daily while working.

(Tr. 47, 637.)  Given the limited and infrequent treatment, inconsistent symptom complaints, and

lack of objective medical evidence supporting those symptoms, the ALJ reasonably discounted

plaintiff's symptom testimony.

### 2. Activities of daily living

The ALJ cited plaintiff's daily activities as being inconsistent with her alleged

limitations. *See Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007) (there are two ways daily

activities may support discounting symptom testimony: (1) the activities contravene the

claimant's allegations of functional limitations; or (2) the activities "meet the threshold for transferrable work skills") In January 2018, plaintiff reported that she relied on others to do all her cooking and household chores. (Tr. 326-27.) Plaintiff reported that she can "walk 10 [minutes]," and has no problems driving, but that she is limited by "pain, vertigo, [and] safety issues due to mental fog." (Tr. 327, 619.) In her consultative exam, she reported spending her time watching television, reading, and coloring. (Tr. 620.) The ALJ found that plaintiff's testimony conflicted with her self-reported ability to manage her own personal care needs, grocery shop, drive, and "sustain over six months of work activity in 2020." (Tr. 638.) The court agrees that plaintiff's daily activities are inconsistent with her symptom allegations.

Plaintiff argues the ALJ improperly singled out "a few periods of temporary well-being from a sustained period of impairment" to show daily activities inconsistent with her testimony. (Pl. Br. at 16; quoting *Garrison*, 759 F.3d at 1017-18). The court disagrees. In the decision, the ALJ relied on records throughout the relevant period to support her conclusions that are backed by substantial evidence. For instance, in 2018 plaintiff alleged that she was unable to cook food or perform household chores. Here, the ALJ found that report inconsistent with plaintiff's ability to sustain more than six months of skilled work activity that required her to be on her feet for 12-hour shifts in 2020. (Tr. 638, citing Tr. 838-842; 324-31; 619-20.) An ALJ may consider any work activity in determining whether a claimant is disabled. *See Ford*, 950 F.3d at 1156 (stating an ALJ may consider any work, even part-time work, when considering whether a claimant is disabled). And contrary to plaintiff's report of missing a month of work in 2020, the ALJ noted that plaintiff's contention was unsupported by her earnings for that period. (Tr. 310-11.)

Contrary to her alleged physical limitations, the ALJ pointed out that plaintiff's medical records show that she reported to providers that her job required her to work on her feet for 12 hours a day. For example, on August 15, 2020, plaintiff visited urgent care for a knee injury and reported that she "works in a lab where she's on her feet for 12 hours." (Tr. 606.) Plaintiff requested and was granted "a few extra [Norco] pills," but it was recommended that she go to physical therapy and use a knee immobilizer. (Tr. 607.) There is no record of her following up on either recommendation. On August 24, 2020, plaintiff called Dr. Coss to request "moving up to 3 Norco per day" given the increased pain she has with "standing for 12 [hours] a day at her shifts." (Tr. 610.) Based on plaintiff's reports to providers that she worked on her feet for 12-hour shifts, the ALJ could reasonably determine that plaintiff was not as limited as she alleged and could discount her testimony on that basis.

In sum, the ALJ provided clear and convincing reasons supported by substantial evidence to discount plaintiff's subjective symptom testimony, and those findings will not be disturbed.

## C.  *Lay Witness Testimony*

Lay witness testimony about a claimant's symptoms is competent evidence that an ALJ must consider unless she "expressly determines to disregard such testimony and gives reasons germane to each witness for doing so." *Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir. 2001). An exception to the rule applies, however, "[w]here lay witness testimony does not describe any limitations not already described by the claimant, and the ALJ's well-supported reasons for rejecting the claimant's testimony apply equally well to the lay witness testimony." *Molina v. Astrue,* 674 F.3d 1104, 1118-19 (9th Cir. 2012); *see also* *Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 694 (9th Cir. 2009) ("In light of our conclusion that the ALJ provided clear and

convincing reasons for rejecting [the claimant's] own subjective complaints, and because [the claimant's wife's] testimony was similar to such complaints, it follows that the ALJ also gave germane reasons for rejecting her testimony.").

The Commissioner argues that the new regulations no longer require an ALJ to provide reasons germane to non-medical sources in discounting their testimony. (Def. Br. at 16-17.) Subsection (d) of the new regulations provides: "We are not required to articulate how we considered evidence from nonmedical sources using the requirements in paragraphs (a)-(c) in this section." 20 C.F.R. § 404.1520c(d). Subsections (a) through (c) lay out the new standards for evaluating medical opinion evidence. *Id.* § 404.1520c(a)-(c). In the Commissioner's view, lay testimony is a "nonmedical source," and ALJ's are not required to articulate how that evidence was considered. *See Kennedy v. O'Malley*, No. 22-35866, 2024 WL 242992, at *1-2 (9th Cir. Jan. 23, 2024) (stating that under the new regulations, an ALJ is not required to articulate how [she] considered evidence from nonmedical sources), and *Fryer v. Kijakazi*, No. 21-36004, 2022 WL 17958630, at *1 n.1 (9th Cir. Dec. 27, 2022) ("It is an open question whether ALJs are still required to consider lay witness evidence under the revised regulations, although it is clear they are no longer required to articulate it in their decisions."). The court is unpersuaded by the Commissioner's argument.

The Ninth Circuit has not yet decided whether the regulations relating to medical evidence affect an ALJ's analysis of lay witness testimony. *Wilson v. O'Malley*, 23-35463, 2024 WL 2103268, at *2 (9th Cir. May 10, 2024) (stating is it unclear "whether an ALJ is required to provide germane reasons for discounting lay witnesses under the new regulations"). Still, most of the district courts in this circuit have "concluded that the new regulations have not eliminated an

ALJ's obligation to consider and address lay witness testimony." *Tracy Q. v. Kijakazi*, No. 622-cv-00692-SI, 2024 WL 706963, at *7 (D. Or. Feb. 21, 2024); *accord Christopher M. v. Comm'r, Soc. Sec. Admin.*, Case No. 6:22-cv-01378-SB, 2023 WL 8827678, at *10 (D. Or. Dec. 21, 2023); *Jerald H. v. Comm'r of Soc. Sec.*, Case No. 3:22-cv-05855-GJL, 2023 WL 6533477, at *4 (W.D. Wash. Oct. 6, 2023); *Gardner v. Comm'r of Soc. Sec. Admin.*, Case No. CV-22-00321-TUC-LCK, 2023 WL 6173220, at *6 (D. Ariz. Sept. 21, 2023); *Joseph L. S. v. Kijakazi*, Case No. 5:23-cv-00006-BFM, 2023 WL 5611408, at *5 (C.D. Cal. Aug. 30, 2023); *Sharon W. v. Kijakazi*, Case No. 1:22-cv-00013-DKG, 2023 WL 246391, at *8 (D. Idaho Jan. 18, 2023).

Plaintiff argues that the ALJ erred in failing to provide reasons germane in discounting the lay witness testimony of her husband, son, and daughter-in-law. (Pl. Br. at 18.) They each completed witness statements regarding plaintiff's limitations and symptoms. (Tr. 346-52; 388-94; 396-402.) The ALJ concluded that the lay witness testimony was inconsistent with the "medical and other evidence of record." (Tr. 634.) For example, the ALJ found that the witnesses described limitations to plaintiff's ability to walk that were inconsistent with medical examinations showing a normal gait. (Tr. 444, 536, 542, 556, 560, 597.) Additionally, the ALJ noted that the lay witnesses provided inconsistent reports about plaintiff's ability to tend to personal care, including a 2018 report from her son, stating plaintiff needed help dressing and bathing, which conflicted with reports from her daughter-in-law and husband in 2019 indicating that plaintiff was independent in her personal care. (Tr. 347, 390, 398.). Finally, the ALJ noted that the lay testimony was inconsistent with plaintiff's ability to work in 2020. (Tr. 634.) The reasons provided by the ALJ are sufficiently germane and are a reasonable reading of the record.

According to plaintiff, the ALJ "improperly focused on minor, inconsequential inconsistencies" and failed to provide reasons for "discounting the limitations the witness described which would be disabling." (Pl. Br. at 18.) The court disagrees. The ALJ reasonably may consider plaintiff's inconsistent statements about her ability to function during the relevant period. *See* 20 C.F.R. § 404.1520b (an ALJ may consider all evidence, including inconsistencies in the record, when determining whether a claimant is disabled). Moreover, the ALJ reviewed the medical and other evidence and supported her conclusions with substantial evidence. The ALJ thus reasonably concluded that the limitations described by plaintiff's husband, son, and daughter-in-law were inconsistent with the record and thus provided germane reasons, backed by substantial evidence, for discounting that testimony.

C.     ***Vocational Expert Testimony***

Plaintiff's final argument rests on the proposition that, because the ALJ rejected limitations alleged in the medical opinion evidence, symptom testimony, and lay witness testimony, the hypothetical posed to the VE was incomplete and thus has no evidentiary value. (Pl. Br. at 19.) Having concluded that the ALJ did not err, the hypothetical proposed to the VE contained all the limitations credited by the ALJ and supported by the record. *See Kitchen v. Kijakazi*, 82 F.4th 732, 742 (9th Cir. 2023) (confirming that an ALJ may accept or reject restrictions in a hypothetical question that are not supported by substantial evidence) (citations omitted). The ALJ, therefore, did not err in relying on the VE's testimony.

In summary, the ALJ's conclusion as to the medical opinions, plaintiff's symptom testimony, the lay witness testimony, and the vocational expert's testimony are based on substantial evidence and supported by reasonable references drawn from the record.

Page 19 – OPINION AND ORDER

**CONCLUSION**

For the above reasons, the court AFFIRMS the Commissioner's final decision.

IT IS SO ORDERED.

DATED: February 28, 2025

/s/ JEFF ARMISTEAD
_____
JEFF ARMISTEAD
United States Magistrate Judge